Anthony CARDINAL

v.

John GORCZYK and Jeffrey Amestoy.

Civ. A. No. 5:94–CV–200.

United States District Court,
D. Vermont.

March 16, 1995.

See also, 155 Vt. 411, 584 A.2d 1152, and
—— Vt. ——, 649 A.2d 227.

Seth E. Lipschutz, Office of the Defender Gen., Montpelier, VT, for plaintiff.

Pamela Hall Johnson, State's Attys. Office, Burlington, VT, for defendants.

### OPINION AND ORDER

BILLINGS, Senior District Judge.

On December 9, 1994, Magistrate Judge Jerome J. Niedermeier issued a Report and Recommendation advising the Court to deny Petitioner Anthony Cardinal's request for a writ of habeas corpus under 28 U.S.C. § 2254.[1] The Magistrate rejected Cardinal's claim that his state conviction was obtained in violation of his right to be present during jury selection, as secured by the Sixth and Fourteenth Amendments. Cardinal has filed an objection. For the reasons stated herein, we decline to accept the Magistrate's recommendation and hold that Cardinal's petition should be granted.

### Factual Background

The State of Vermont charged Petitioner Cardinal with sexual assault against his sev-

---

1. Section 2254 provides in pertinent part:
   [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

enteen year-old daughter. Cardinal had two jury trials. At each trial, the court conducted both a general and an individual voir dire. At the first trial, Cardinal was present during the individual voir dire. The jury was unable to reach a verdict. At the second trial, Cardinal was not present at the individual voir dire. The jury returned a guilty verdict on April 28, 1988. Cardinal asserts that the conviction must be overturned because he was not allowed to be present for individual jury voir dire, despite not having waived that right.

### Procedural History

After Cardinal's conviction, he appealed the matter to the Vermont Supreme Court. The conviction was affirmed. *State v. Cardinal*, 155 Vt. 411, 584 A.2d 1152 (1990). On July 16, 1992, Cardinal filed a pro se petition for post-conviction relief in state court, but he did not allege that he was denied the right to be present at the voir dire. On March 19, 1993, the petition was voluntarily dismissed by Cardinal's counsel due to jurisdictional requirements. On March 23, 1993, Cardinal filed another petition in the proper court with the help of counsel, raising the grounds that are asserted here.

■ Cardinal's request for post-conviction relief was first heard by the Washington Superior Court. The court made findings of fact and conclusions of law. The findings of fact of the state trial and appellate courts are entitled to a presumption of correctness by this Court. 28 U.S.C. § 2254(d); *Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983). These findings may only be set aside if they "lack even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.Ct. 843, 849, 74 L.Ed.2d 646 (1982).

After the post-conviction hearing, the Washington Superior Court found as follows.[2] The jury in the second trial was impaneled on April 25, 1988. For each set of venirepersons, the court first held a general voir dire. During this voir dire, Cardinal was seated at counsel's table and had no problem either seeing or hearing the proceedings. Because of the sensitive nature of the trial, the court then proceeded to conduct individual voir dire at the bench. The state court found that when it was time for individual voir dire, Cardinal got out of his chair and started to go with his attorneys to the bench. One of his attorneys told him to "wait there." Cardinal remained seated at counsel table during the individual voir dire.

The venirepersons were seated 25 feet from Cardinal, to the right of the judge and 8 inches above the floor. Because of the sensitive nature of the questions asked of the potential jurors, the judge purposely tried to keep the voir dire quiet. Cardinal was not able to hear much of the individual voir dire because of his distance from the bench and the lowered voices of the participants. Cardinal's view of the venirepersons was insufficient to provide him an opportunity to observe their demeanor and visceral reactions to the questions asked of them.

Petitioner's attorneys explained to him in a general manner the process, purposes of and reasons for individual voir dire, but not that he had a right to see and hear the individual voir dire. Cardinal never told his attorneys that he did not wish to observe the individual voir dire, nor did he make any such statement to the trial court. Cardinal's attorneys, however, have no recollection of him making a request to hear and see the individual voir dire, and they said they are certain that no such request was made.

The Washington Superior Court concluded that Cardinal was not afforded an opportunity to meaningfully participate in the process and that he did not knowingly and voluntarily waive this right. The state appealed the grant of post-conviction relief to the Vermont Supreme Court, which reversed. *In re Cardinal*, 649 A.2d 227, 230 (Vt.1994). The Vermont Supreme Court determined that Cardinal had not been intentionally excluded from the individual voir dire proceedings. The court thus concluded that the onus had been on Cardinal to advise the court that he could

---

**2.** The Vermont Supreme Court accepted the trial court's factual findings and did not make additional findings.

neither see nor hear the proceedings, and that his failure to do so constituted a waiver.

█ Cardinal then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, for which the Magistrate Judge recommends dismissal. With respect to the issue of the jury impaneling,[3] the Magistrate concluded that Cardinal never asserted his right to be present at the bench, and had thus waived the right. *See United States v. Gagnon,* 470 U.S. 522, 529, 105 S.Ct. 1482, 1485, 84 L.Ed.2d 486 (1985). The Magistrate "did not consider [Cardinal's] attempt to approach the bench as a request to stand at the bench during voir dire." *Cardinal v. Gorczyk,* No. 5:94–CV–200, slip. op. at 11 n. 2 (D.Vt. Dec. 9, 1994). It is to this conclusion that Cardinal has taken exception. Cardinal argues that his attempt to approach the bench during individual voir dire was an assertion of his right to be present for that stage of the proceeding.

3. The Report and Recommendation also concluded that the Vermont Supreme Court's opinion was subject to review because it did not rest on adequate and independent state grounds. No objection has been lodged against that portion of the Report and Recommendation. Nor has an objection been mounted against Judge Niedermeier's finding that the Vermont Supreme Court's determination that Cardinal waived his rights was a legal conclusion, as opposed to a factual finding, and thus not subject to a presumption of correctness. We adopt these conclusions *in toto* and reject the Magistrate's Report and Recommendation solely on the merits.

4. At the post-conviction hearing, Cardinal gave the following testimony:

Q Did you ever inform [your attorneys] that you couldn't see or hear the individual voir dire?
A To my recollection I did, yes.
Q And what was their response?
A They said we'd discuss it after; take notes.
Q Did you ever tell the judge, listen, I can't hear or see the individual voir dire?
A I tried that once in the first trial and the judge told me not to do that. That my lawyers were there to represent me and everything I did it had to be through them.
Q So you're saying that you told [your attorneys] I can't see or hear the jury for individual voir dire and they did nothing?
A They kept discussing it amongst themselves at the table.
*In re: Anthony Cardinal,* Transcript of Hearing on Post–Conviction Relief of May 26, 1993 (hereinafter "Transcript") at 47–48.

The Magistrate Judge also noted that although Cardinal consulted with his attorneys after the completion of individual voir dire for each panel of jurors, there is no evidence that he mentioned at the time that he could neither hear nor see the proceedings. As Cardinal has pointed out, however, this conclusion is not necessarily supported by the record.[4] Finally, the Magistrate noted that Cardinal did not adequately explain his failure to raise this contention earlier. Again, Cardinal points to the transcript of the post-conviction hearing where he testified that he had previously advised his attorneys that he had not attended the individual voir dire.[5]

Pursuant to Fed.R.Civ.P. 72 and 28 U.S.C. § 636(b)(1), we make a *de novo* determination upon the record before the Magistrate.

### Discussion

█ That Cardinal had a fundamental right to be present at the individual voir dire

Cardinal's testimony that he informed his attorneys that he could neither see nor hear was, however, directly contradicted by one of his attorneys, Paul Volk, at the post-conviction hearing. *See, e.g.,* Transcript at 25, 67. His other attorney, Stephen Blodgett, said that he did not recall whether Cardinal had told him that he could neither see nor hear, but he may have. *See* Transcript at 71.

5. The following testimony was given by Cardinal at the post-conviction hearing:

Q And it's taken you five years to now say you never heard the individual voir dire?
A No, ma'am. I first talked with [my appeals attorney] about—over four years ago about it.
Q Now, Mr. Volk not only represented you during trial, but he represented you at your sentencing, am I correct?
A Yes, ma'am
Q Did you raise that issue with him at sentencing?
A Yes.
Q At the individual—about the individual voir dire?
A I raised a whole bunch of issues. He told me that would be appellate issues and not his job.
Q How about at sentence reconsideration when you admitted to the offense, did you raise the issue to Mr. Volk then?
A That, again, he would have told me the same thing, I'm sure.
Transcript at 49–50.

is not in dispute. This right is rooted in the Sixth Amendment's Confrontation Clause, the Fourteenth Amendment's due process guarantee and a common law right to presence at trial. *Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484; *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); *United States v. Washington*, 705 F.2d 489, 496 (D.C.Cir.1983). *See also* Fed. R.Crim.P. 43(a).[6] The right is considered fundamental because it is only by his presence during jury impaneling that a defendant can assist his attorney in the selection of an impartial jury. A defendant may form distinct impressions and prejudices "conceive[d] upon the bare looks and gestures" of proposed jury members. *United States v. Crutcher*, 405 F.2d 239, 244 (2d Cir.1968) (quoting *Lewis v. United States*, 146 U.S. 370, 376, 13 S.Ct. 136, 138, 36 L.Ed. 1011 (1892)), *cert. denied*, 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969). *See also United States v. Alessandrello*, 637 F.2d 131, 151 (3d Cir.1980) (Higginbotham, J., dissenting), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981). Only by his presence, therefore, may a defendant effectively exercise his peremptory challenges. *United States v. Camacho*, 955 F.2d 950, 953 (4th Cir.1992).

### I. Waiver

■ Like any constitutional guarantee, however, the right to be present at trial may be waived. *United States v. Mackey*, 915 F.2d 69, 72 (2d Cir.1990) (quoting *Snyder*, 291 U.S. at 106, 54 S.Ct. at 332). This waiver may be express or it may be implied by the defendant's conduct. *Gagnon*, 470 U.S. at 529, 105 S.Ct. at 1485; *Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973). In *Gagnon*, for example, the United States Supreme Court ruled that the defendant's failure to invoke his right to be present at an *in camera* meeting held by the judge to determine whether an individual juror had been tainted constituted a valid waiver of that right. 470 U.S. at 529, 105 S.Ct. at 1485.[7] Defendant's counsel was present at the meeting. The Court concluded that defendant had waived his right to be present through his failure to assert a right to attend, to lodge any type of objection, or to make a post-trial motion. The Court reasoned that a district court "need not get an express 'on the record' waiver from the defendant for every trial conference which a defendant may have a right to attend." *Id.* at 528, 105 S.Ct. at 1485.[8]

■ A defendant's waiver of his right to be present at trial, however, is only valid if it is found to be "knowing and voluntary." *Polizzi v. United States*, 926 F.2d 1311, 1319 (2d Cir.1991); *United States v. Hernandez*, 873 F.2d 516, 519 (2d Cir.1989). In considering whether Cardinal made a knowing and voluntary waiver of his right to presence, this Court must "indulge every reasonable presumption against the loss of constitutional rights." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 1060, 25 L.Ed.2d 353 (1970); *Camacho*, 955 F.2d at 955; *Crutcher*, 405 F.2d at 243.

■ In the instant case, it is clear that Cardinal did not make an explicit, on-

---

**6.** Fed.R.Crim.P. 43(a) provides, in pertinent part:

> The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, ...

Because Cardinal was tried in the Vermont state court system, however, the procedural requirements of the Federal Rules are inapplicable.

**7.** We note that in *Gagnon*, the Supreme Court spoke only of the right to be present under Fed. R.Crim.P. 43. Because Rule 43 codifies rights afforded by the Constitution and the common law, its protective scope is actually considered to be broader than that of the Constitution alone. *See Camacho*, 955 F.2d at 953. We assume, therefore, that *Gagnon* stands for the proposition that the right of presence afforded by the Sixth and Fourteenth Amendments can be waived as well. *But see United States v. Gordon*, 829 F.2d 119, 127 n. 8 (D.C.Cir.1987) ("[w]here constitutional rights are involved, the standard for determining whether a criminal defendant has validly waived such a right is considerably more stringent than that provided by Rule 43(b).")

**8.** It should be noted that the *Gagnon* Court considered the *in camera* conference to be a "relatively minor incident" in the trial. 470 U.S. at 529, 105 S.Ct. at 1485. The jury selection process, on the other hand, is integral in the defendant's Sixth Amendment right to trial by an impartial jury, and thus hardly can be considered minor.

the-record waiver of his right to be present at the individual voir dire. Yet, as aforementioned, an explicit waiver is unnecessary; a defendant's failure to assert his right will also constitute a waiver. *See Gagnon,* 470 U.S. at 529, 105 S.Ct. at 1485. The Magistrate Judge concluded that Cardinal waived his right to be present at the bench during individual voir dire by failing to assert that right. The Magistrate did not consider Cardinal's attempt to approach the bench as a request to stand at the bench during voir dire. We believe this conclusion is clearly erroneous.

■ By standing up and attempting to walk to the bench, Cardinal made a bona fide assertion of his right to presence. Indulging every presumption against Cardinal's loss of rights, we can reach no other conclusion. Having asserted his right, Cardinal cannot be considered to have made a knowing and voluntary waiver under the *Gagnon* standard. Nevertheless, according to the facts found by the state court, one of Cardinal's attorneys told him to "wait there." Cardinal's attorneys then participated in the individual voir dire. We must, therefore, turn to the issue of whether Cardinal's attorneys effectively waived Cardinal's right to be present at the individual voir dire.

The United States Court of Appeals for the Second Circuit has determined that "waiver by counsel of defendant's right to be present during the proceedings is valid when made in the presence of the defendant." *United States v. Doe,* 964 F.2d 157, 159 (2d Cir.1992) (citing *Polizzi,* 926 F.2d at 1322–23), *cert. denied,* —— U.S. ——, 113 S.Ct. 628, 121 L.Ed.2d 560 (1992). *Compare United States v. Felix–Rodriguez,* 22 F.3d 964, 967 (9th Cir.1994) (replaying tape-recorded conversations to jury is stage of trial at which defendant's presence is required and this right cannot be waived by counsel); *Gordon,* 829 F.2d at 125 (where counsel indicated to court that defendant did not wish to attend voir dire, court should have held an on-the-record hearing to advise defendant of his right to be present at voir dire and obtained a personal waiver in open court). In *Polizzi,* the defendant's attorney, in the defendant's presence, requested the court's permission for the defendant's absence from trial, acknowledged the defendant's right to be present, and waived any future claim of prejudice to defendant's rights based on his absence. 926 F.2d at 1319. In light of this proffer by defendant's attorney, the district court found that the defendant knowingly and voluntarily waived his right to be present during his five-week absence from trial. The Second Circuit affirmed this conclusion. *See also Doe,* 964 F.2d at 159 (Second Circuit accepted counsel's waiver, made in defendant's absence, of defendant's right of presence at sentencing conference where "exigencies of the moment related to [defendant's] safety" prevented defendant's presence); *United States v. Corcoran,* 855 F.Supp. 1359, 1376 (E.D.N.Y.1994) (counsel's participation at side-bar conference with prospective juror during jury selection waived defendant's right of presence where defendant did not assert that right).

The facts in the instant case, however, force us to distinguish it from those cited above. Unlike *Polizzi,* Cardinal's counsel did not make an explicit, on-the-record acknowledgment of Cardinal's rights and waiver of those rights in Cardinal's presence. Contrary to *Doe,* there were no exigent circumstances justifying the court's acceptance of counsel's purported waiver. Finally, Cardinal, as distinguished from the defendant in *Corcoran,* made an explicit effort to exert his right to be present at the bench. Cardinal's counsel, however, quashed this assertion by telling Cardinal to "wait there." In light of this fact, we can hardly find that Cardinal or his counsel made a knowing and voluntary waiver of Cardinal's right to be present. This conclusion is supported by the state court's finding that: "Petitioner's attorneys explained to him in a general manner the process, purposes of and reasons for individual voir dire, but not that he had a right to see and hear the individual voir dire." Accordingly, we conclude that neither Cardinal nor his counsel effectively waived his right to presence at the bench during the individual voir dire. Thus, Cardinal's constitutional right to be present was violated.

## II. The Harmless–Error Standard

In light of the fact that neither Cardinal nor his attorney waived his right to be present at the bench during individual voir dire, we turn to the question of whether Cardinal is entitled to a writ of habeas corpus. As a threshold matter, we must consider what harmless-error standard should be applied when considering a habeas corpus petition involving violation of the fundamental right to presence at trial.

In *Brecht v. Abrahamson*, 507 U.S. ——, —— – ——, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993), the United States Supreme Court enunciated two separate categories of constitutional error for federal courts considering habeas corpus petitions. The first type is "trial error." According to the *Brecht* Court, trial error " 'occurs during the presentation of the case to the jury,' and is amenable to harmless-error analysis because it 'may ... be quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial].' " *Id.* at ——, 113 S.Ct. at 1717 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 1263–64, 113 L.Ed.2d 302 (1991)). For these "trial errors," the *Brecht* Court instructed that the *Kotteakos* standard, focusing on whether the error "had substantial and injurious effect or influence in determining the jury's verdict" was to replace the *Chapman* standard, which looked to whether the state court's error was "harmless beyond a reasonable doubt." *Brecht,*

507 U.S. at ——, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).[9]

The second category of errors, "structural errors," lie "[a]t the other end of the spectrum of constitutional errors" from trial errors. *Brecht,* 507 U.S. at ——, 113 S.Ct. at 1717. These "structural errors" are errors "in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.* (quoting *Fulminante*, 499 U.S. at 309, 111 S.Ct. at 1264). An example of a "structural error" offered by the *Brecht* Court is the deprivation of the right to counsel. *Id.* These errors require automatic reversal.

Petitioner argues that the error that took place in the instant case was structural, and thus that Cardinal's conviction is subject to automatic reversal. The State, on the other hand, insists that the error should be subject to the harmless-error analysis set forth in *Brecht.* The Court believes that the violation of Cardinal's right to be present at the bench during individual voir dire does not fall neatly into either end of the *Brecht* Court's spectrum. Accordingly, we look to Second Circuit law for guidance. *See Bentley v. Scully*, 41 F.3d 818, 822 (2d Cir.1994) (considerations identified in habeas jurisprudence prior to *Brecht* remain relevant).

Initially, the Second Circuit treated a defendant's absence from jury impaneling as a structural error, which "can never be treated as harmless." *Crutcher*, 405 F.2d at 244.[10]

9. In developing the standard adopted by the *Brecht* Court for use in habeas cases, the *Kotteakos* Court stated:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 765, 66 S.Ct. at 1248.

10. The *Crutcher* court stated:

> the [Supreme] Court in *Chapman* also noted that some of 'our prior cases have indicated

that there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' A defendant's right to be present while the jury is selected would appear to be such a right.... There is no way to assess the extent of the prejudice, if any, a defendant might suffer by not being able to advise his attorney during the impanelling of the jury ... [W]e can only speculate as to what suggestions [the defendant] might or might not have made, since it would be his prerogative to challenge a juror simply on the basis of the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.' Thus, even if the harmless error principle applies generally to departures from the mandates of Rule 43, the government has not been able to convince us that [the defendant] might not have been prejudiced by being absent.

*See also Hernandez,* 873 F.2d at 519 ("the absence of the accused during the impaneling of a jury at his trial raises substantial constitutional concerns"). More recently, however, the Second Circuit declined to pronounce a "blanket rule" for determining whether a defendant's absence during jury impaneling can be treated as harmless, · and instead chose to focus on the facts of, the case before it in determining that a defendant's absence during jury impaneling and some testimony was not harmless-error. 915 F.2d at 74. *See also Alessandrello,* 637 F.2d at 143–44 (no per se rule requiring new trial where defendant absent during jury impaneling). Moreover, the Second Circuit has been willing to apply what appears to be a harmless-error standard where the defendant, like Mr. Cardinal, is present for the general jury voir dire but absent for the individual questioning of potential jurors. *United States v. Dioguardi,* 428 F.2d 1033, 1039 (2d Cir.) (where individual voir dire was conducted without the presence of the defendants at bench, rights were not violated where "[defendants] were seated only 15–20 feet away; their experienced counsel, who had been earlier advised of the proposed procedure, did not ask that they be allowed to come nearer; most of the jurors thus questioned were excused by the court; ample time was given for counsel to consult with defendants concerning challenges; and all the jurors whom the court had not excused where challenged either by the defendants or the Government"), *cert.*

denied, 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970).

 The United States Supreme Court has also indicated that situations where structural error can be found are limited. *Fulminante,* 499 U.S. at 309–310, 111 S.Ct. at 1264–65.[11] These limitations, coupled with the Second Circuit's refusal to set forth a per, se rule in *Mackey* and its unwillingness to find error in *Dioguardi* lead us to conclude that we should treat the error in this case as if it falls on the "trial error" end of the *Brecht* spectrum, despite the fact that the error did not occur "during the presentation of the case to the jury." *Brecht,* 507 U.S. at —, 113 S.Ct. at 1717.

Therefore, we will employ the *Kotteakos* standard in this case and focus on whether the error "had substantial and injurious effect or influence in determining the jury's verdict." Rather than requiring either party to meet a burden with regard to this standard, it is the province of the judge to review the record and to ask: "Do I ... think that the· error substantially influenced the jury's decision?" *O'Neal v. McAninch,* — U.S. —, —, 115 S.Ct. 992, 996, 130 L.Ed.2d 947 (1995).[12]

 With this framework in mind, we focus on the specific facts in this case.[13] Three separate general voir dire, individual voir dire and peremptory strike sessions were held by the court. Although Defendant

405 F.2d at 244 (citations and quotations omitted).

**11.** In *Fulminante,* the Supreme Court offered the following violations as examples of errors that defy harmless-error analysis: total deprivation of the right to counsel; a judge who is not impartial; unlawful exclusion of members of the defendant's race from a grand jury; denial of the right to self-representation at trial; and the violation of the right to a public trial. 499 U.S. at 309–10, 111 S.Ct. at 1264–65 (citations omitted). "Each of these constitutional deprivations is a similar structural defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct. at 1265. *See also Sullivan v. Louisiana,* — U.S. —, — -–—, 113 S.Ct. 2078, 2081–82, 124 L.Ed.2d 182 (1993) (constitutionally deficient reasonable doubt instruction constitutes structural error).

**12.** The *O'Neal* Court specifically retreated from the language in *Brecht* that placed the burden on the petitioner, rather than the Government, to demonstrate "actual prejudice." *O'Neal,* — U.S. at —, 115 S.Ct. at 996; *Brecht,* 507 U.S. at —, 113 S.Ct. at 1722. Among other things, the *O'Neal* Court felt the placement of the burden on the petitioner contravened the *Kotteakos* standard, when read as a whole. *O'Neal,* — U.S. at —, 115 S.Ct. at 996; *Kotteakos; see supra* note 8.

**13.** We find the state court's findings of fact with respect to the issue of prejudice to be lacking. Accordingly, the Court sets forth its own findings of fact on this issue. We make these findings upon review of (1) the Jury Voir Dire transcript from Petitioner's second trial; and (2) the transcript of Petitioner's Post–Conviction Relief Hearing in the Washington County Superior Court.

saw and heard each of the general voir dires, he could neither see nor hear much of the three individual jury voir dire sessions.[14] The individual voir dire sessions took approximately twice as long as the general voir dire sessions. During the general voir dire sessions, the court and the attorneys extracted limited information from the jurors.[15] With respect to questions concerning the jurors' feelings about sexual assault, they were told that they need not provide information in front of the other panel members and that the topic could be explored when the potential juror came to the bench for individual voir dire. During the individual voir dire each juror spoke separately with the judge and the attorneys. They were asked probing questions concerning their feelings about the perpetrators and victims of sexual abuse, their prior exposure to allegations of sexual abuse and whether they thought they would serve as a good juror.[16] Both the prosecution and the defense counsel exercised all six of their allotted peremptory challenges. In addition, a few jurors were excused by the court for cause.

As we have stated, during Petitioner's first trial, he was present during the individual voir dire. The jury was unable to reach a verdict. At the second trial, Petitioner was absent from the individual voir dire and the jury convicted him. We consider these facts in conjunction with our knowledge that Petitioner is accused of a heinous crime—one that is apt to inspire deep-felt prejudices. Moreover, the questions asked of the panel members during the individual voir dire were extremely probing and sensitive. Although we are satisfied that Petitioner's attorneys adequately represented him at the bench, this fact does not assuage our concern that had Petitioner been present, he likely would have formed his own impressions and opin-

**14.** Petitioner was also not present at the bench when the attorneys exercised peremptory challenges.

**15.** The presiding judge asked the panel members if they were concerned over the fact that the case involved sexual abuse. He then queried about pre-trial publicity. Those panel members who indicated that they had knowledge of the case were asked about the matter further during individual voir dire.

The state asked the venirepersons if they knew the states' attorneys or the witnesses; if they felt they could sit in judgment of others; if they could assess witness credibility and not judge the witnesses; if they could reach a verdict; if they believed the state shouldn't prosecute "incest" cases; if they had a problem with the fact that the state had no medical evidence; if they could assess the quality and not the quantity of evidence; if they had a problem with the fact that the victim had previously made similar accusations which she had recanted; if they would require a witness to corroborate the victim's story; and if they had a problem with being sequestered.

Defense counsel asked very general questions concerning the individuals' background. Specifically, they were asked if they: were involved in law enforcement; had taken any psychology courses; had dealt with adolescents; had been a complainant or a witness in a previous criminal case before; knew of the witnesses; were involved in the construction or electric business; would have a problem if the Defendant didn't testify; could judge the Defendant only on the charge before them and not on prior bad acts which might be introduced; and could rely on the evidence alone and not rely on conjecture.

The venirepersons were also asked if complaints of sexual harassment had either been filed by them or against them. For this question they were asked to indicate with their hand and they would be asked more detailed questions later. The venirepersons were also told that if there was something that came to their mind, during general voir dire, indicating that they wouldn't make a good juror, they should raise their hand and they would not be asked any questions in front of other people.

**16.** Typical individual voir dire questions asked by the state were as follows: (1) have you or anyone in your family been a victim of a sexual offense; (2) have you or anyone in your family been accused of a sexual offense; (3) do you have preconceived notions about how sex offenders behave; (4) do you have preconceived notions about how sex offense victims behave; (5) would you require the state to bring in medical testimony demonstrating that abuse occurred.

Typical individual voir dire questions asked by the defense were: (1) would you relax the "reasonable doubt" standard in this case because of the serious, emotional nature of the charge; (2) would you be less demanding in terms of the evidence you would require to convict someone of this offense; (3) do you know anyone whose children are in state custody; (4) do you believe it's possible that a person could invent a charge like this, and if so, why; (5) if you were me, would you want yourself as a juror in this case? In addition to these questions, defense counsel explored further with the jurors their answers to a number of the questions asked of them during general voir dire, including their exposure to pretrial publicity.

ions of the proposed panel members. It would have been Petitioner's "prerogative to challenge a juror simply on the basis of the sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another." *Crutcher,* 405 F.2d at 244. These impressions, formed by the Petitioner, may have been different than those made by his attorneys.[17]

Because Petitioner was not present to form his own impressions we find ourselves in grave doubt about whether the constitutional error in this case had a "substantial and injurious effect or influence in determining the jury's verdict." In *O'Neal,* the United States Supreme Court counseled that when a federal judge in a habeas proceeding finds himself in such "grave doubt," the petitioner must win. —— U.S. at ——, 115 S.Ct. at 996. Accordingly, we conclude that Cardinal's petition for a writ of habeas corpus must be granted.

We do not make this decision lightly. We realize that "[r]etrying defendants whose convictions are set aside imposes significant 'social costs,' including the expenditure of additional time and resources for all the parties involved, the 'erosion of memory' and 'dispersion of witnesses' which accompany the passage of time and make obtaining convictions on retrial more difficult, and the frustration of 'society's interest in the prompt administration of justice.'" *Brecht,* 507 U.S. at ——, 113 S.Ct. at 1721 (quotations omitted). But, we must weigh these factors against our conclusion that a serious violation of Petitioner's constitutional rights took place. *O'Neal,* —— U.S. at ——, 115

S.Ct. at 998. Because we have grave doubts as to whether this error had a "substantial and injurious effect or influence in determining the jury's verdict," we believe the Petitioner is entitled to a new trial.

### Conclusion

The Court adopts the Magistrate Judge's Report and Recommendation in part and rejects it in part. We GRANT the Petition for a Writ of Habeas Corpus.

SO ORDERED.

---

**17.** Because of the length of the jury voir dire, the nature of the questions asked, the fact that the subject matter went to the very heart of the case, and the possibility of extreme prejudice due to the nature of the crime, we find that the instant case is distinguishable from those cases where a defendant's absence during the individual voir dire portion of the jury impaneling has been found to be harmless error. *See United States v. Willis,* 759 F.2d 1486, 1500 (11th Cir.) (defendants' absence for individual questioning of venirepersons concerning pretrial publicity was harmless error where lawyers explored effect of pretrial publicity during four hour individual voir dire, took recess to consider how to exercise peremptory strikes and exercised those strikes in open court), *cert. denied,* 474 U.S. 849, 106 S.Ct.

144, 88 L.Ed.2d 119 (1985); *Washington,* 705 F.2d at 496 (court's denial of defendant's request to participate in individual voir dire of thirteen venirepersons to discuss prior involvement with criminal justice system harmless error where (1) defendant remained present in courtroom, (2) only very limited portion of voir dire conducted at bench, and (3) defendant permitted to confer with counsel regarding jurors' responses at the bench; *Alessandrello,* 637 F.2d at 139, 144 (individual voir dire of all proposed venirepersons concerning exposure to pretrial publicity in defendants' absence harmless error where the portion for which defendants were absent concerned only one topic and experienced defense counsel were present).